[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 398.]

DAYTON BAR ASSOCIATION *v*. BRUNNER.

[Cite as *Dayton Bar Assn. v. Brunner*, 2001-Ohio-82.]

*Attorneys at law—Misconduct—Indefinite suspension with credit for time served since date of interim suspension—Conviction for bank fraud—Conviction for conspiracy to commit tax fraud.*

(No. 00-1564—Submitted December 12, 2000—Decided May 2, 2001.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-104.

_____

*Per Curiam.*

{¶ 1} On December 8, 1997, relator, Dayton Bar Association, filed a complaint charging that respondent, L. Keith Brunner of Dayton, Ohio, Attorney Registration No. 0006567, violated DR 1-102(A)(3) (a lawyer shall not engage in conduct involving moral turpitude) and 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent answered, admitting all the allegations of the complaint and asking that he be heard in mitigation. Thereupon the matter was referred to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} Based on the stipulations of the parties and testimony at a hearing, the panel found that in 1984, Arthur Millonig, one of respondent's partners in a group known as the "Brunner Principals," arranged to purchase commercial real estate in Allen, Texas, from the owner, Securities Savings Association of Texarkana ("SSA"), for $13,200,000. The property was also subject to an $8,000,000 mortgage. At the time SSA had a number of troubled loans, but this property had appreciated from the time SSA acquired it and the profit from such a sale could bolster SSA's financial position.

{¶ 3} Although federal regulations prohibited SSA from financing one hundred percent of the purchase price, SSA lent $2,600,000 to three Brunner Principals, not including respondent, who then lent the money to Millonig. Millonig in turn used the funds as his twenty percent down payment on the real estate. Millonig also gave SSA a second mortgage for $2,600,000 and assumed the $8,000,000 first mortgage. Millonig was thereby able to obtain financing for one hundred percent of the purchase price from SSA. Respondent was not involved in the transfer of the funds, but he was involved in structuring and orchestrating the transaction.

{¶ 4} On March 22, 1996, respondent pled guilty to two counts of bank fraud in violation of Section 1344, Title 18, U.S.Code, and was sentenced to prison for forty-eight months and fined $10,000. He also pled guilty to conspiracy to commit tax fraud in violation of Section 371, Title 18, U.S.Code and was sentenced to six months in prison, two years of supervised release, and fined $5,000. Special assessments were also imposed. Because of these felony convictions, we suspended respondent on December 19, 1996, for an interim period. *In re Brunner* (1996), 77 Ohio St.3d 1499, 673 N.E.2d 597.

{¶ 5} Respondent was incarcerated in federal prisons from November 1996 through mid-July 1998. He then spent nine months at a halfway house and was subject to home confinement for three months. At the time of the panel hearing, respondent had completed all his prison terms, paid all his fines, and was employed as the Chief Operating Officer of a financial services company.

{¶ 6} At the hearing, the relator withdrew the charge of a violation of DR 1-102(A)(3). The panel concluded that respondent violated DR 1-102(A)(4). In mitigation, the panel found that respondent cooperated with the federal investigation and recommended that he be indefinitely suspended from the practice of law with credit given for the time he served since the date of his interim

suspension.  The board adopted the findings, conclusions, and recommendation of the panel.

{¶ 7} We have reviewed the record and adopt the findings, conclusion, and recommendation of the board.  Respondent is hereby indefinitely suspended from the practice of law with credit given for the time he has served since the date of his interim suspension, December 18, 1996.  Costs are taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

*Patrick W. Allen*, for relator.

*Charles W. Kettlewell*, for respondent.

_____