CINCINNATI BAR ASSN. *v.* KELLOGG.

[Cite as *Cincinnati Bar Assn. v. Kellogg*, **126 Ohio St.3d 360, 2010-Ohio-3285.**]

*Attorney misconduct, including money-laundering conviction — Indefinite suspension.*

(No. 2009-2302 — Submitted March 30, 2010 — Decided July 20, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-092.

_____

**Per Curiam**.

{¶ 1} Respondent, Paul Joseph Kellogg of West Chester, Ohio, Attorney Registration No. 0062303, was admitted to the practice of law in Ohio in 1993.

{¶ 2} In December 2008, relator, Cincinnati Bar Association, filed a complaint charging respondent with multiple violations of the Code of Professional Responsibility arising from his August 2008 conviction in the United States District Court for the Southern District of Ohio on two counts of money laundering, two counts of conspiracy to commit money laundering, one count of conspiracy to obstruct proceedings before the United States Federal Trade Commission ("FTC"), and one count of conspiracy to obstruct proceedings before the United States Food and Drug Administration ("FDA").

{¶ 3} In May 2009, a three-member panel of the Board of Commissioners on Grievances and Discipline conducted a hearing, wherein it heard testimony from respondent and two character witnesses, and admitted 18 exhibits, including several stipulations of the parties. At the hearing, relator suggested that the appropriate sanction for respondent's misconduct is disbarment, while respondent asked the panel to recommend a two-year

suspension with either a partial stay or credit for his voluntary withdrawal from the practice of law upon his conviction.

{¶ 4} In July 2009, the panel approved a proposed agreed order permitting relator to amend its complaint to allege that respondent's conduct violated either the Ohio Code of Professional Responsibility or the Ohio Rules of Professional Conduct. The original complaint alleged violations of only the Rules of Professional Conduct, but the conduct occurred prior to the effective date of those rules.

{¶ 5} After considering all the evidence, the panel made findings of fact, including a finding that respondent's misconduct occurred before February 1, 2007, the effective date of the Rules of Professional Conduct. The panel concluded that respondent had committed six violations of the Code of Professional Responsibility and recommended that respondent be suspended from the practice of law for two years, with the final six months of the suspension stayed on the condition that he comply with the requirements of his supervised release.

{¶ 6} On December 14, 2009, we imposed an interim felony suspension on respondent's license pursuant to Gov.Bar R. V(5)(A)(4). *In re Kellogg*, 123 Ohio St.3d 1518, 2009-Ohio-6503, 918 N.E.2d 163. And on December 22, 2009, the board adopted the panel report in its entirety and recommended that respondent's suspension begin to run on January 15, 2009, the date that he began serving his prison sentence.

{¶ 7} Relator objects to the board's recommended sanction, arguing that pursuant to our precedent, respondent's felony convictions for money laundering warrant permanent disbarment. Respondent urges us to adopt the board's recommended sanction, which he contends reflects the panel's assessment of the unique facts and circumstances of his case. However, we reject these

recommendations and find that the appropriate sanction for respondent's misconduct is an indefinite suspension.

**Misconduct**

{¶ 8}   From the time he was admitted to practice until 2003, respondent's practice consisted mainly of estate-planning and small-business matters.   In August 2003, he accepted a position as general counsel for a rapidly growing nutraceutical company owned by his childhood friend, Steve Warshak.

{¶ 9}   In late 2003 and early 2004, numerous government agencies, including the FTC, the FDA, and attorneys general from 17 states, began to investigate the company's operations.  And in March 2004, the first of six class-action suits was filed against the company.   The primary focus of these investigations, other than the FDA's,  and lawsuits was the company's practice of enrolling its customers into a "continuity program," under which the company automatically shipped and charged customers for products that they had not ordered.

{¶ 10} As a result of the FTC and FDA investigations, a federal grand jury indicted respondent on nine felony counts.  In February 2008, a jury found him guilty of two counts of conspiracy to commit money laundering, two counts of money laundering, and one count of conspiracy to obstruct proceedings before the FTC for his role in a scheme to protect Warshak's assets from the FTC and future legal claims by transferring $14 million into two separate trusts.  Although outside counsel prepared the trust documents, respondent reviewed them to ensure that they complied with Ohio law and served as the trustee for both trusts.  The jury also found respondent guilty of a single count of conspiracy to obstruct proceedings before the FDA, for instigating the removal of a misbranded[1]

---

1. The misbranded product claimed to contain ingredients that it did not.  At the criminal trial, a warehouse employee testified that he had repackaged the product, originally in boxes that

supplement from the company's warehouse after learning that an FDA inspection of the facility was imminent. The jury acquitted respondent of the remaining counts.

**{¶ 11}** Despite a guideline sentencing range of 235 to 293 months, and a probation office's recommendation of a 188-month sentence, the trial court sentenced respondent to one year and one day in federal prison, making him eligible for a 15 percent reduction in his prison time. He was released to a halfway house in August 2009, and upon the expiration of the remainder of his prison term in November 2009, began serving a three-year period of supervised release.

**{¶ 12}** Based upon these findings, the board concluded that respondent's conduct, all of which occurred prior to February 1, 2007, violated DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude), 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice), 7-102(A)(7) (prohibiting a lawyer from counseling or assisting his client in conduct that the lawyer knows to be illegal or fraudulent), 7-102(A)(8) (prohibiting a lawyer from knowingly engaging in illegal conduct), and 7-109(A) (prohibiting a lawyer from suppressing any evidence that he or his client has a legal obligation to reveal or produce). We accept these findings of misconduct.

## Sanction

**{¶ 13}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final

---

identified it as promoting prostate health, into boxes that identified it as promoting heart health. The repackaged product was then put into the company's stock to be sold to customers.

determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case involves unique facts and circumstances, we are not limited to the factors specified in the rule and may take into account "all relevant factors" in determining which sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 14} Here, respondent both conspired to commit and committed money laundering by assisting in the creation of two trusts designed to protect $14 million of Warshak's assets—the ill-begotten gains of the company's "continuity program"—from the FTC and future lawsuits by its customers. By instructing an employee to "get rid of" a misbranded product housed in the company's warehouse, he also set in motion a scheme to conceal evidence of the company's misdeeds from federal investigators. This conduct involving dishonesty and moral turpitude violated the very laws that respondent took an oath to uphold.

{¶ 15} As for aggravating factors, the board determined that respondent acted with a dishonest or selfish motive, although he apparently did not benefit financially from his actions, and that he engaged in multiple offenses of misconduct. BCGD Proc.Reg. 10(B)(1)(b) and (d). And in mitigation, the board found that respondent has no prior disciplinary record, has made some efforts to rectify the consequences of his misconduct, has been cooperative in the disciplinary proceedings, has established that he is a person of good character, despite his criminal convictions, and has been penalized by the criminal justice system for his misconduct. BCGD Proc.Reg. 10(B)(2)(a), (c), (d), (e), and (f).

{¶ 16} The board also considered that respondent has accepted responsibility for his actions and has expressed remorse. It noted that, with the federal court's blessing, respondent continued to work for the company, assisting

the bankruptcy trustee in his efforts to sell the company as a going concern, and that he immediately ceased practicing law upon his sentencing. Additionally, it appears that the board considered respondent's leukemia, which was diagnosed near the time of his misconduct, to be a mitigating factor.

{¶ 17} Weighing these factors, the board recommended that we impose a two-year suspension, with six months stayed, beginning on January 15, 2009, the date that respondent began serving his prison sentence. While we may defer to the expertise of the panel or board, accepting their findings of misconduct or their recommended sanctions for misconduct, as the ultimate arbiter of misconduct and sanctions in disciplinary cases, we are not required to do so. *Disciplinary Counsel v. Kelly*, 121 Ohio St.3d 39, 2009-Ohio-317, 901 N.E.2d 798, ¶ 11, citing *Cincinnati Bar Assn. v. Powers*, 119 Ohio St.3d 473, 2008-Ohio-4785, 895 N.E.2d 172, ¶ 21.

{¶ 18} In support of its objections, relator cites a number of cases in which this court has permanently disbarred attorneys who engaged in money laundering and other comparable crimes. But those cases do not hold that permanent disbarment is the presumptive sanction for money laundering. And even when there is a presumption in favor of permanent disbarment, that presumption may be rebutted by evidence in mitigation. See, e.g., *Disciplinary Counsel v. Smith*, 101 Ohio St.3d 27, 2003-Ohio-6623, 800 N.E.2d 1129, ¶ 9 ("Absent any mitigating factors, disbarment is the appropriate sanction for an attorney's misappropriation of client funds"); *Disciplinary Counsel v. Hunter*, 106 Ohio St.3d 418, 2005-Ohio-5411, 835 N.E.2d 707, ¶ 42 (Moyer, C.J., dissenting) ("by definition, a presumptive sanction of disbarment does not preclude the application of mitigation. That is, the presumption in favor of disbarment in the case of theft from clients is a rebuttable one").

{¶ 19} The cases relator cites in favor of permanent disbarment are factually distinguishable from the facts presented here. In *Toledo Bar Assn. v.*

6

*Cook*, 114 Ohio St.3d 108, 2007-Ohio-3253, 868 N.E.2d 973, numerous aggravating factors—including respondent's prior disciplinary record for self-dealing, her deceptive explanations for her actions, and her failure to recognize how her actions violated the ethical standards for lawyers or why those standards even exist—weighed in favor of a more severe sanction, but there were no mitigating factors warranting leniency.

{¶ 20} In Disciplinary Counsel v. Bein, 105 Ohio St.3d 62, 2004-Ohio-7012, 822 N.E.2d 358, respondent had engaged in a pattern of criminal conduct over a five-year period, showed no remorse, downplayed his role in the criminal conspiracy, caused significant financial harm to the victims of his thefts and conspiracy, and was motivated by financial gain. Moreover, relator did not learn about the respondent's federal convictions until six years after the respondent was sentenced. Id. at ¶ 4, 5, 8, 12. The only mitigating factors weighing in favor of leniency were the respondent's lack of a prior disciplinary record, his cooperation during the disciplinary process, and the imposition of other penalties in his criminal case. Id. at ¶ 9. And in *Cincinnati Bar Assn. v. Banks* (2002), 94 Ohio St.3d 428, 763 N.E.2d 1166, the respondent failed to participate in the disciplinary proceedings against him, and he knowingly gave materially false testimony on four separate occasions during his criminal trial in federal court.

{¶ 21} Of the cases cited by relator, the related cases of *Disciplinary Counsel v. Jones* (1993), 66 Ohio St.3d 74, 609 N.E.2d 150, and *Disciplinary Counsel v. Williams* (1993), 66 Ohio St.3d 71, 609 N.E.2d 149, are perhaps the most analogous to the case at bar. Those respondents engaged in a conspiracy to launder more than $50,000 that they believed to be the proceeds from the sale of illegal drugs. In permanently disbarring Jones, we acknowledged the mitigating evidence that he had initiated the scheme due to economic hardship and that he had submitted numerous letters attesting to his good character. But we also noted that Jones's active participation in the laundering scheme and his "belief that his

conduct did not involve moral turpitude" were aggravating factors. We also disbarred Williams for his participation, despite evidence that he had cooperated with the government, that he had accepted responsibility for his crime, and that he was the least culpable participant in the scheme.

{¶ 22} But recently, in *Disciplinary Counsel v. Gittinger*, 125 Ohio St.3d. 467, 2010-Ohio-1830, 929 N.E.2d 410, we imposed an indefinite suspension on an attorney convicted of money laundering and conspiracy to commit bank fraud, based in part upon a condition in the respondent's federal criminal sentence that prohibited him from practicing law during his five-year term of supervised release.

{¶ 23} Here, based upon the seriousness and severity of respondent's crimes, we agree that his misconduct warrants a greater sanction than the board has recommended. We observe that despite federal guidelines recommending a sentence of 19 to 24 years in prison, respondent served only ten and one-half months, seven and one-half months in prison and three months in a halfway house, and is currently serving three years of supervised release. If we were to impose the board's recommended sanction, respondent could resume the practice of law more than two years before the expiration of that supervised release.

{¶ 24} But even if we were to accept relator's arguments that we should reject two factors that the board considered mitigating—namely respondent's leukemia diagnosis, which relator argues should be rejected because it has not been causally linked to respondent's criminal conduct, and respondent's acceptance of responsibility for his actions, which relator questions, arguing that respondent tried to minimize his culpability—the mitigating factors in this case would still weigh in favor of a sanction less severe than permanent disbarment.

{¶ 25} In particular, we note that respondent has assisted the company's bankruptcy trustee in his efforts to sell the company as a going concern, which preserved the jobs of more than 200 innocent employees. Respondent also

cooperated with a federal investigation of the legal firm that drafted the trusts and provided counsel to the company. Moreover, the letters and testimony offered by respondent demonstrate that he is known for his honesty and integrity, despite his criminal convictions, and that the conduct leading to his convictions was an aberration, rather than the norm. BCGD Proc.Reg. 10(B)(2)(c), (d), and (e).

{¶ 26} Based upon the foregoing, we conclude that the appropriate sanction for respondent's misconduct is an indefinite suspension. Accordingly, Paul Joseph Kellogg is hereby indefinitely suspended from the practice of law in the state of Ohio. Respondent may petition for reinstatement once he has completed the term of supervised release imposed by the federal court in his underlying criminal case, but not before the two-year period that respondent must wait before petitioning for reinstatement pursuant to Gov.Bar R. V(10)(B). Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

O'CONNOR and O'DONNELL, JJ., dissent.

BROWN, C.J., not participating.

_____

**O'DONNELL, J., dissenting.**

{¶ 27} I respectfully dissent. The appropriate sanction for this level of misconduct is disbarment. As the majority opinion recounts, respondent did not plead guilty but rather contested the charges and was found guilty by a jury of two counts of conspiracy to commit money laundering, two counts of money laundering involving $14 million, and conspiracy to obstruct official proceedings before two federal agencies, the Federal Trade Commission and the Food and Drug Administration.

{¶ 28} The federal sentencing guidelines suggest a prison sentence for such conduct of 20 to 25 years. Respondent served less than one year. Despite

mitigation, our role is to protect the public from lawyers who fail to adhere to the highest ethical standards, not coddle offending attorneys. Respondent's conduct is the epitome of disrespect for the system of justice he swore to uphold. Accordingly, I would disbar respondent for this conduct.

O'CONNOR, J., concurs in the foregoing opinion.

_____

Susan R. Bell and Peter Rosenwald, for relator.

Bieser, Greer & Landis, L.L.P., David C. Greer, and James P. Fleisher, for respondent.

_____