DISCIPLINARY COUNSEL *v.* SMITH.

[Cite as *Disciplinary Counsel v. Smith,* **128 Ohio St.3d 390, 2011-Ohio-957.**]

*Attorneys — Misconduct — Felony conviction for tax fraud and impeding IRS investigation — Indefinite license suspension ordered, with credit for time served under interim suspension, but petition for reinstatement not permitted until completion of supervised release and restitution agreement with federal government.*

(No. 2010-1888 — Submitted January 4, 2011 — Decided March 9, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-029.

_____

**Per Curiam**.

{¶ 1} Respondent, Joseph Harold Smith of Avon, Ohio, Attorney Registration No. 0041412, was admitted to the practice of law in Ohio in 1989. On April 24, 2009, we suspended respondent's license to practice on an interim basis pursuant to Gov.Bar R. V(5)(A)(4) upon receiving notice that he had been convicted of a felony. See *In re Smith*, 121 Ohio St.3d 1456, 2009-Ohio-1891, 905 N.E.2d 195.

{¶ 2} In April 2010, relator, Disciplinary Counsel, filed a complaint charging respondent with four violations of the Code of Professional Responsibility arising from the conduct that resulted in his federal convictions: failing to accurately report his income to the Internal Revenue Service ("IRS"), conspiring to defraud the IRS, and corruptly endeavoring to obstruct and impede the ensuing IRS investigation.

{¶ 3} A panel of the Board of Commissioners on Grievances and Discipline accepted the parties' agreed stipulations of fact and misconduct and the

recommendation that respondent be indefinitely suspended from the practice of law in Ohio with credit for time served under his interim suspension. The panel, however, recommended that respondent not be permitted to apply for reinstatement until he completes his federal supervised release and enters into an agreement with the federal government for payment of restitution. The board has accepted the panel's findings and its recommended sanction, as do we.

**Misconduct**

{¶ 4} The parties have stipulated that from 1983 through February 17, 2003, respondent was employed by the Catholic Diocese of Cleveland. He began as the diocese treasurer. By 2000, he had been promoted to chief financial officer, and was finally named financial and legal secretary. In August 2006, a federal grand jury issued a 27-count indictment against respondent and a codefendant. Respondent was charged with one count of conspiracy to commit mail fraud, eight counts of mail fraud, eight counts of money laundering, one count of conspiring to defraud the IRS, four counts of making false tax returns, and one count of corruptly endeavoring to obstruct and impede an IRS investigation.

{¶ 5} A jury found respondent guilty of one count of conspiracy to defraud the IRS, four counts of making false tax returns, and one count of corruptly endeavoring to obstruct and impede an IRS investigation. He was acquitted of mail fraud and conspiracy to commit mail fraud, and the court dismissed the money-laundering charges.

{¶ 6} At the panel hearing, respondent testified that the conduct leading to his federal convictions began in the late 1990s when he received a series of offers to go into private or public practice. According to respondent, the priest who oversaw respondent's employment did not want respondent to leave the diocese and agreed to pay him approximately $250,000 annually, but stated that this compensation could not go through the diocese payroll. To conceal

respondent's compensation, respondent and his codefendant, who provided comptroller services for the diocese through his company, moved money from the diocese, through the codefendant's company, and into two businesses owned by respondent. Respondent failed to pay taxes on this compensation, and while representing respondent in a 1999 audit, the codefendant presented fraudulent documentation of expenses purportedly incurred by respondent and falsely stated that respondent had no sources of income other than those reported on his tax return.

{¶ 7} Respondent was sentenced to one year and one day in federal prison and was ordered to perform 150 hours of community service. He was also ordered to pay restitution of $395,154 to the IRS, based on the statutory default tax rate of 28 percent as applied to his unreported income of $1,411,265. Respondent was released from the federal prison in Morgantown, West Virginia on November 14, 2009, and stayed at a halfway house in Cleveland for approximately two months. He is currently serving a two-year period of supervised release that will terminate in January 2012. At the time of the panel hearing, he had paid approximately $2,000 in restitution, and upon the conclusion of his supervised release, he will be required to enter into an agreement with the IRS for continued payment of restitution.

{¶ 8} The panel and board concluded that the parties' stipulated facts and exhibits and respondent's testimony clearly and convincingly established that respondent's conduct violated DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude), 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We accept these findings of fact and misconduct.

**Sanction**

{¶ 9}   When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.   In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 10} Respondent has admitted that he engaged in a course of conduct designed to conceal the true value and source of the compensation he received for services provided to the Catholic Diocese of Cleveland, that he failed to accurately report his income to the IRS, and that during an IRS audit, his agent falsely stated that all of respondent's sources of income were reported on his tax return.   As a result of this conduct, respondent has been convicted of conspiracy to defraud the IRS, making false tax returns, and corruptly endeavoring to obstruct and impede an IRS investigation.   He has served a federal prison sentence, has spent time in a halfway house, will remain on supervised release until January 2012, and has been ordered to pay almost $400,000 in restitution to the IRS.

{¶ 11} As aggravating factors, the parties stipulated and the panel and board found that respondent had acted with a dishonest or selfish motive and had engaged in a pattern of misconduct.   See BCGD Proc.Reg. 10(B)(1)(b) and (c). Mitigating factors include respondent's lack of a prior disciplinary record, his full and free disclosure to Disciplinary Counsel and cooperative attitude toward these proceedings, and evidence of his good character and reputation, including letters from an auxiliary bishop of the Catholic Diocese of Cleveland and a paralegal,

both of whom worked with respondent at the diocese, and a family friend who is also an attorney. See BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). The panel and board also found that other penalties had been imposed, including incarceration. See BCGD Proc.Reg. 10(B)(2)(f).

{¶ 12} In light of these factors and our precedent, the board recommends that we adopt the parties' recommendation to indefinitely suspend respondent, with credit for time served under his interim suspension, but suggests that we condition his reinstatement upon completion of his federal supervised release and consummation of a final restitution agreement with the federal government.

{¶ 13} In *Dayton Bar Assn. v. Brunner* (2001), 91 Ohio St.3d 398, 746 N.E.2d 596, we imposed an indefinite suspension with credit for time served under an interim felony suspension on an attorney who had violated DR 1-102(A)(4) by structuring and orchestrating a commercial real estate transaction in contravention of federal regulations that prohibited the seller from financing 100 percent of the purchase price. Mitigating factors in *Brunner* included the respondent's cooperation with the federal investigation, his completion of a federal prison term, his halfway-house confinement, and his payment of his criminal fines.

{¶ 14} More recently, in *Cincinnati Bar Assn. v. Kellogg*, 126 Ohio St.3d 360, 2010-Ohio-3285, 933 N.E.2d 1085, we sanctioned an attorney for his role in a scheme to shield $14 million of his employer's assets from the Federal Trade Commission and future legal claims, concluding that his conduct, which resulted in multiple federal felony convictions, violated DR 1-102(A)(3) through (5), as well as 7-102(A)(7) (prohibiting a lawyer from counseling a client in conduct he knows to be illegal) and (8) (prohibiting a lawyer from knowingly engaging in illegal conduct), and 7-109(A) (prohibiting a lawyer from suppressing evidence he has an obligation to produce). *Kellogg* at ¶ 10, 12. Citing Kellogg's assistance to the employer's bankruptcy trustee, which helped preserve the jobs of more than

200 innocent employees, his cooperation in a related federal investigation, and evidence of his good character, we imposed an indefinite suspension rather than a permanent disbarment. *Kellogg* at ¶ 25-26. Observing, however, that Kellogg had served less than one year of his three-year term of federal supervised release at the time of our decision, we conditioned his reinstatement upon completion of that term. *Kellogg* at ¶ 11, 26.

{¶ 15} Here, in contrast, respondent's license to practice law has been suspended for almost two years, and respondent has accepted responsibility and expressed genuine remorse for his misconduct. Moreover, his supervised release is scheduled to terminate in January 2012. Under these facts, we agree that an indefinite suspension with credit for time served, with reinstatement conditioned upon both the completion of federal supervised release and execution of a final agreement for payment of restitution, is the appropriate sanction for respondent's misconduct.

{¶ 16} Accordingly, Joseph Harold Smith is hereby indefinitely suspended from the practice of law in Ohio. He shall receive credit for time served under his interim suspension, but he shall not be permitted to petition for reinstatement until he has completed his federal supervised release and entered into a final agreement with the federal government for payment of restitution. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Senior Assistant Disciplinary Counsel, for relator.

Joseph H. Smith, pro se.

_____