[Cite as *Disciplinary Counsel v. O'Malley*, 137 Ohio St.3d 161, 2013-Ohio-4566.]

DISCIPLINARY COUNSEL *v.* O'MALLEY.

[Cite as *Disciplinary Counsel v. O'Malley*, 137 Ohio St.3d 161,

2013-Ohio-4566.]

*Attorney discipline—Misprision of felony—False statements to federal law-enforcement agents—Illegal influencing of a judge—Indefinite suspension.*

(No. 2012-2070—Submitted March 13, 2013—Decided October 17, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-113.

_____

**Per Curiam**.

{¶ 1} Respondent, Joseph Patrick O'Malley of Westlake, Ohio, Attorney Registration No. 0060087, was admitted to the practice of law in Ohio in 1992.

{¶ 2} In a complaint certified by a probable-cause panel of the Board of Commissioners on Grievances and Discipline in December 2011, relator, disciplinary counsel, charged O'Malley with nine violations of the Rules of Professional Conduct arising from his improper influencing of a judge and his August 2011 convictions in the United States District Court for the Northern District of Ohio for misprision of a felony and making a materially false statement in a matter within the jurisdiction of the federal government. In August 2011, we imposed an interim felony suspension on O'Malley's license pursuant to Gov.Bar R. V(5)(A)(4), *In re O'Malley*, 129 Ohio St.3d 1440, 2011-Ohio-4146, 951 N.E.2d 1039, after receiving a certified copy of the judgment entry of his conviction and imposed a registration suspension in November 2011, *In re Attorney Registration Suspension of O'Malley,* 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.2d 310.

{¶ 3} In October 2012, the parties submitted stipulations of fact and misconduct and of aggravating and mitigating factors and suggested that the appropriate sanction for O'Malley's misconduct is an indefinite suspension with credit for time served under the interim suspension of August 2011, on the condition that he complete his federal supervised release prior to reinstatement. They also submitted five exhibits and numerous letters from supporters documenting his contributions to the community, the profession, and individual families.

{¶ 4} A panel of the board conducted a hearing in which O'Malley testified about his misconduct and several witnesses testified about his good character. The panel adopted the parties' stipulations of fact, misconduct, and aggravating and mitigating factors, as well as the stipulated sanction, adding that O'Malley must comply with all requirements of his interim suspension order prior to reinstatement. The full board adopted the panel's findings and recommended sanction. No objections have been filed.

{¶ 5} Having reviewed the record, we adopt the board's findings of fact and misconduct, but we reject the recommended sanction. Instead, we find that the appropriate sanction for O'Malley's misconduct is an indefinite suspension with no credit given for time served.

**Misconduct**

*Count One—Conviction of Misprision of a Felony*

{¶ 6} O'Malley began his legal career continuing his pre-law-school work in the county recorder's office part-time and working to establish his own private practice. He rose through the ranks and eventually served as interim county recorder, after which his prior boss, Frank Russo, at that point the county auditor, requested that he work for him full-time as his chief deputy auditor, a position O'Malley accepted in 1997. He left that position after one and one-half years and worked as the director of technology for the county for the next five and

one-half years, until 2004. At that time, he left county employment and practiced law full-time in his private practice. He did, however, provide consulting services to the county as an independent contractor for the county's Information Service Center from January 2008 to December 2009.

{¶ 7} In 2008, Russo asked O'Malley to assist him, as county auditor, in responding to a public-records request submitted by the Cleveland Plain Dealer, which was conducting an investigation of patronage at the auditor's office. The FBI and IRS at this time were conducting investigations of corruption in Cuyahoga County. Russo asked O'Malley specifically to look at the personnel file of Joseph Gallucci, who had been incumbent Russo's opponent in the 2006 election but who in October of that year had withdrawn from that race and was soon thereafter, in November, employed by Russo. O'Malley in 2006 had attended a meeting with Gallucci and Russo in which Gallucci had expressed an interest in obtaining a county job after the election, O'Malley understanding that Gallucci's chance of winning the election was small.

{¶ 8} When O'Malley reviewed Gallucci's file, he found that it contained so little information about Gallucci that a determination about his qualifications for the position Gallucci held could not have been made on the basis of the application. O'Malley consequently suggested that Gallucci "complete" his application, which O'Malley believed Gallucci then did. O'Malley pled guilty to and was convicted of misprision of a felony relating to Gallucci's hiring and the changing of the employment application.

{¶ 9} The parties stipulated and the board found that O'Malley's conduct in the Gallucci matter violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h)

(prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

*Count 2—The AHB Litigation*

**{¶ 10}** In his private practice, O'Malley represented two homeowners in a multiparty foreclosure action. In that litigation, he filed on behalf of his clients a motion for summary judgment, as did all the parties. In the spring or summer of 2008, O'Malley's efforts to settle the case were hindered by the lack of a ruling on the motions, which had been pending between one and two years. He asked then-auditor Russo, who personally knew the trial judge, Steven Terry, to tell the judge to deny the summary-judgment motions because at that point he wanted the opportunity to go to trial to get a resolution for his client. On July 18, 2008, the judge denied the motions for summary judgment as instructed by Russo,[1] including the motions O'Malley had filed on behalf of his own clients, one of which O'Malley considered meritorious. That same day, Judge Terry told O'Malley that he had denied the summary-judgment motions, and O'Malley called Russo and stated, "You took care of that, he [the judge] just told me. * * * [T]hat's huge. I should be able to settle that thing. It's a nightmare."[2] O'Malley eventually settled the litigation, reducing the bank's demand to his clients from $36,000 to $27,000.

**{¶ 11}** The parties stipulated and the board found that O'Malley's conduct in the AHB litigation violated Prof.Cond.R. 3.5(a)(1) (prohibiting a lawyer from seeking to influence a judicial officer, juror, prospective juror, or other official by means prohibited by law), 3.5(a)(3) (prohibiting a lawyer from communicating ex

---

1. Terry is now under an interim felony suspension. *In re Terry*, 130 Ohio St.3d 1403, 2011-Ohio-5473, 955 N.E.2d 1015.

2. Conversations involving O'Malley were taped by federal authorities while they primarily were investigating others.

parte with a judicial officer as to the merits of the case during the proceeding unless authorized by law or court order), 8.4(c), 8.4(d), and 8.4(h).

*False Statements to the FBI*

**{¶ 12}** Relating to the facts surrounding the AHB litigation, O'Malley was interviewed by FBI agents and told them he had not asked Russo for any help on his cases and that his private law practice was limited to representing indigent criminal defendants. O'Malley pled guilty to and was convicted of making a materially false statement in a matter within the jurisdiction of the United States government. O'Malley's violations here, stipulated by the parties and found by the board, are incorporated into the violations under Count 1, above.

**{¶ 13}** O'Malley was sentenced to four months in prison, a $10,000 fine, two years of supervised release, and 250 hours of community service. He has served his prison term, has paid his fine, and at the time of the hearing was within five hours of completing his community-service obligations.

**{¶ 14}** Upon a thorough review of the record, we adopt the board's findings of fact and misconduct with respect to the above counts, but we impose a different sanction.

**Sanction**

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 16}** As aggravating factors, the parties stipulated and the board found that O'Malley committed multiple offenses and acted with a dishonest and selfish motive. *See* BCGD Proc.Reg. 10(B)(1)(b) and (d). In mitigation, the parties

stipulated and the board found that O'Malley has no prior disciplinary record, has made full and free disclosure to the disciplinary board, maintained a cooperative attitude toward the proceedings, had imposed against him criminal penalties that include a four-month prison sentence, a $10,000 fine, and two years of supervised release, and submitted positive character evidence. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), (e), and (f).

{¶ 17} The parties stipulated that the proper sanction for O'Malley's misconduct is an indefinite suspension from the practice of law with credit for time served under the interim suspension of August 22, 2011, on condition that O'Malley complete his federal supervised release prior to any petition for reinstatement. The board added that O'Malley must also comply with all requirements of his interim suspension order.

{¶ 18} Relator provided case law supporting an indefinite suspension in lieu of disbarment, namely, *Ohio State Bar Assn. v. Johnson*, 96 Ohio St.3d 192, 2002-Ohio-3998, 772 N.E.2d 1184; *Cincinnati Bar Assn. v. Kellogg*, 126 Ohio St.3d 360, 2010-Ohio-3285, 933 N.E.2d 1085; *Disciplinary Counsel v. Smith*, 128 Ohio St.3d 390, 2011-Ohio-957, 944 N.E.2d 1166; and *Disciplinary Counsel v. Rolla*, 95 Ohio St.3d 27, 2002-Ohio-1366, 765 N.E.2d 316. While in all those cases the respondent's sanction was an indefinite suspension, in only one, *Smith*, did the respondent receive credit for time served under his interim suspension. Under these facts, however, where O'Malley's conduct undermined the integrity of the judicial system, we determine that an indefinite suspension without credit for time served under O'Malley's interim suspension is the appropriate sanction for his misconduct.

{¶ 19} Accordingly, Joseph Patrick O'Malley is hereby indefinitely suspended from the practice of law in Ohio. He shall not be permitted to petition for reinstatement unless he has satisfied all aspects of his federal sentence, including completing his supervised release. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'NEILL, J., dissents and would grant O'Malley credit for time served under his interim felony suspension.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Senior Assistant Disciplinary Counsel, for relator.

Crabbe, Brown & James, L.P.A., Larry H. James, and Christina L. Corl, for respondent.

_____