**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
***Disciplinary Counsel v. Salerno,*** **Slip Opinion No. 2019-Ohio-435.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an
advance sheet of the Ohio Official Reports. Readers are requested to
promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65
South Front Street, Columbus, Ohio 43215, of any typographical or other
formal errors in the opinion, in order that corrections may be made before
the opinion is published.

SLIP OPINION NO. 2019-OHIO-435

DISCIPLINARY COUNSEL *v.* SALERNO.

[Until this opinion appears in the Ohio Official Reports advance sheets, it
may be cited as *Disciplinary Counsel v. Salerno,* Slip Opinion No.
2019-Ohio-435.]

*Judges—Misconduct—Violations of the Code of Judicial Conduct for failure to act*
*in a manner that promotes public confidence in the judiciary, failure to*
*uphold and apply the law and to perform all duties of the judicial office*
*fairly and impartially, and engaging in ex parte communications—*
*Conditionally stayed one-year suspension.*

(No. 2018-1088—Submitted January 9, 2019—Decided February 12, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme
Court, No. 2017-061.

_____

**Per Curiam.**

{¶ 1} Respondent, Amelia Angela Salerno, of Columbus, Ohio, Attorney
Registration No. 0032253, was admitted to the practice of law in Ohio in 1982. She

was elected to the Franklin County Municipal Court in 2005 and continues to serve as a judge on that court.

{¶ 2} We publicly reprimanded Salerno in March 2015 for criticizing jurors in her courtroom after they returned a not-guilty verdict in a criminal trial. *Ohio State Bar Assn. v. Salerno*, 142 Ohio St.3d 95, 2015-Ohio-791, 28 N.E.3d 84.

{¶ 3} In a complaint certified to the Board of Professional Conduct on December 4, 2017, relator, disciplinary counsel, alleged that Salerno's conduct in two criminal cases she presided over violated the Code of Judicial Conduct. The parties stipulated to the admission of facts, aggravating and mitigating factors, and 11 exhibits. Salerno agreed that she failed to act in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and avoids the appearance of impropriety; failed to uphold and apply the law and perform the duties of her judicial office in a fair and impartial manner; and engaged in ex parte communications.

{¶ 4} Based on the parties' stipulations and the evidence presented at a hearing, a panel of the board found that Salerno engaged in the charged misconduct and recommended that she be suspended from the practice of law for one year, all stayed on the conditions that she pay the costs of this proceeding and commit no further misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction, with the added requirement that Salerno complete a minimum of six hours of continuing legal education ("CLE") in judicial ethics.

{¶ 5} We accept the board's findings of fact and misconduct and agree that a one-year suspension, fully stayed on the conditions recommended by the board, is the appropriate sanction in this case.

## Misconduct

### Count One: Mendoza

{¶ 6} On November 9, 2016, Tabatha Scalf and Juan Mendoza were arrested and charged with possession of drugs, a first-degree felony.

**{¶ 7}** The next day, Scalf, who was represented by private counsel, appeared for her arraignment before Salerno in the Franklin County Municipal Court. The prosecutor requested a "high bond." Scalf's counsel explained that Scalf had been a lifelong resident of Franklin County, owned an electronics business, lived with her mother, and had no previous criminal record. Salerno then set Scalf's bail at $75,000 cash, surety bond, or appearance.

**{¶ 8}** Later that day, Mendoza appeared for his arraignment before Salerno with a public defender and a Spanish-speaking interpreter. The prosecutor again requested a "high bond" and also informed Salerno that although Mendoza had no known prior record, he did not have a Social Security number, which inhibited the state's ability to fully assess Mendoza's criminal history. The prosecutor also expressed concern that Mendoza might be a flight risk. Salerno acknowledged that Mendoza and Scalf were codefendants and appeared to reside in the same home. However, noting "the amount of heroin involved" and that Mendoza had "no identifiers," was "not documented in our country," and did not claim to own a business as Scalf had, Salerno set his bail at $350,000 cash or surety bond only.

**{¶ 9}** Following his arraignment, Mendoza sought to retain attorney Eric Brehm. Brehm then contacted Salerno's bailiff, Rob Phillips, by text message, and the following exchange ensued:

> [Brehm:] Hey rob are you in 4d today? Brenda Williams the bond lady is messaging me about a bond that got set on a case this morning where the cofedendant got $75k the other got $350k
>
> [Brehm:] Brenda said that was prolly a mistake so I was wondering how it could get corrected
>
> [Brehm:] Defending is juan Mendoza
>
> [Brehm:] Co defendant is tabitha scalf at $75k

[Brehm:] Looking for the same bond on Juan Mendoza. Let me know please what the judge says about it and if it can get corrected today if you are around

[Phillips:] We left about 1215 today. I'll ask her. She's duty. She's the one to make a change if needed

[Brehm:] Cool thank you

[Phillips:] I sent her all the info. See if it jogs her memory

[Brehm:] Thanks again man

[Phillips:] You got a case number ?

[Phillips:] And what's name again

[Phillips:] She's gonna look at it

[Brehm:] Yep one sec

[Brehm:] Juan Mendoza

[Brehm:] 16 cra 25613

[Brehm:] Tabitha Scalf is co def

{¶ 10} Phillips forwarded the text communications to Salerno.

{¶ 11} Based on Brehm's ex parte communications, Salerno reconsidered Mendoza's bail and then telephoned the clerk's office and lowered the amount from $350,000 to $85,000. Mendoza posted bond and was released from custody later that day. But Salerno never informed the prosecutor of Brehm's ex parte communications or the fact that she had reduced Mendoza's bond; instead, the prosecutor learned of Mendoza's release through the media.

{¶ 12} At her disciplinary hearing, Salerno testified that she did not initially think that the text messages were improper because they came to her through her bailiff. She explained that she had questioned her initial decision to set Mendoza's bond so high and that subsequently, she determined that it would be appropriate to reduce his bail amount. Salerno also acknowledged that she had come to the

4

understanding that the text messages were improper ex parte communications and assured the panel that she would not engage in such conduct again.

{¶ 13} The parties stipulated and the board found that Salerno's conduct violated Jud.Cond.R. 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and to avoid impropriety or the appearance of impropriety) and 2.9(A) (generally prohibiting a judge from initiating, receiving, permitting, or considering ex parte communications).

*Count Two: Toe*

{¶ 14} On January 15, 2017, Mai Toe was stopped and ticketed for making an improper turn in violation of Columbus Traffic Code 2131.10(c). The case was filed in the Franklin County Municipal Court and assigned to Salerno.

{¶ 15} Toe proceeded pro se at her February 27, 2017 bench trial. The prosecutor assigned to the case learned that Toe had an outstanding warrant for her arrest based on her failure to appear in a separate traffic case arising from a citation for driving at an unreasonably slow speed in violation of Columbus Traffic Code 2133.04(a). The prosecutor offered to dismiss the slow-speed case if Toe agreed to plead guilty in the improper-turn case, but Toe rejected the offer and the improper-turn matter proceeded to trial. After hearing testimony from the police officer who issued the citation and from Toe, Salerno found Toe guilty of making an improper turn. At that time, the following exchange occurred:

> [Salerno:] Based upon the testimony, I am going to find Ms. Toe guilty. I'm not going to charge her any fine and court costs. I am also going to ask that this prosecutor dismiss the slow speed case so we don't have to have her back and go through another trial on this. Since you originally offered her that for a guilty plea, are you willing to do that?

[Prosecutor:] Your Honor, that offer was on the table before proceeding with trial.

[Salerno:] I understand that, Counselor, but rather than us having to go through another trial.

[Prosecutor:] The case that is currently in order-in status, Your Honor[?]

[Salerno:] Yeah, get rid of that case; just get rid of it so we're done. Ms. Toe does not need to come back and we don't have to redo another trial.

[Prosecutor:] Your Honor, if she wants to enter a plea to that case, she is more than welcome to do that.

[Salerno:] Okay. Fine. I will do it this way. Please delete the prior stuff. I'll find you not guilty, ma'am. Thank you. Trying to clean up the docket, guys, not add to it. Okay. Thank you.

[Toe:] So does this case—do I need anything or—

[Salerno:] Nope.

[Toe:] Okay. Thank you very much. I appreciate it.

[Salerno:] Don't do it again.

[Toe:] Okay. Thank you.

{¶ 16} Following the trial, the prosecutor consulted her supervisor, who instructed her to return to Salerno's courtroom to ensure that the warrant for Toe's arrest on the slow-speed case had been withdrawn and that the case would be set for trial. When the prosecutor returned to the courtroom, Salerno called her to the bench and, off the record, asked her to dismiss the slow-speed case. After the prosecutor declined that request, Salerno went back on the record and announced:

Miss Toe had a court trial on an improper turn. There was direct contradiction between her and the other witness. The officer said she turned left, and she stated she turned right. It was a he-said-she-said case and it was not beyond a reasonable doubt. I will find Miss Toe not guilty on that case.

In addition, Miss Toe has a case that is order-in in my courtroom. That will be reassigned. Order-in set aside. Reassign for a new date.

In judicial discretion and reviewing this, I decided before this was docketed and finalized that I would make the decision to find her not guilty because of the fact of the contradictory testimony and it wasn't proven beyond a reasonable doubt.

So, Miss Toe, you will be getting a new date for your second case.

{¶ 17} The prosecutor later dismissed the slow-speed case because the police officer who issued the ticket failed to appear for trial.

{¶ 18} At her disciplinary hearing, Salerno testified that after her efforts to assist the parties in reaching a plea deal proved unsuccessful, she tried the improper-turn case. She explained that she attempted to achieve what she believed was a "fair" result by finding Toe guilty of that offense, in the hope that the prosecutor would then agree to dismiss the slow-speed case. She candidly admitted that she became frustrated when the prosecutor—whom she described as "brand-new," "overzealous," "abrupt," and "rude"—rejected her proposed resolution and that that frustration probably led her to change her guilty finding in Toe's improper-turn case. Noting that there was no dispute that Salerno's frustration and loss of her temper changed the outcome of that case, the board agreed that her conduct

violated Jud.Cond.R. 1.2 and 2.2 (requiring a judge to uphold and apply the law and to perform all duties of the judicial office fairly and impartially).

**{¶ 19}** We agree with the board's findings of fact and misconduct as to Counts 1 and 2.

### Sanction

**{¶ 20}** When imposing sanctions for judicial misconduct, we consider all relevant factors, including the ethical duties that the judge violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases. *See Disciplinary Counsel v. Elum*, 148 Ohio St.3d 606, 2016-Ohio-8256, 71 N.E.3d 1085, ¶ 9.

**{¶ 21}** "The primary purpose of judicial discipline is to protect the public, guarantee the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of this institution." *Disciplinary Counsel v. Russo*, 124 Ohio St.3d 437, 2010-Ohio-605, 923 N.E.2d 144, ¶ 14, citing *Kloepfer v. Comm. on Judicial Performance*, 49 Cal.3d 826, 864-865, 264 Cal.Rptr. 100, 782 P.2d 239 (1989). Here, Salerno's receipt of and action on ex parte communications without the prosecutor's knowledge in Mendoza's case and her intemperate reversal of her guilty finding in Toe's trial serve not only to erode public confidence in her ability to faithfully discharge the duties of her judicial office but also to undermine the public perception of the fairness and impartiality of the courts in this state.

**{¶ 22}** The parties have stipulated and the board found that just two aggravating factors are present—Salerno has a prior disciplinary record and she committed multiple offenses in this case. *See* Gov.Bar R. V(13)(B)(1) and (4). Relevant mitigating factors include Salerno's full and free disclosure to the board and cooperative attitude toward the disciplinary proceedings as well as positive character evidence, including the testimony of Judge Michael J. Holbrook of the Franklin County Court of Common Pleas and more than 30 character letters from

friends, attorneys, former clients, current and former colleagues, and others familiar with her community involvement with LifeCare Alliance, the American Cancer Society, the Columbus Cancer Clinic, and the James Cancer Hospital. *See* Gov.Bar R. V(13)(C)(4) and (5).

{¶ 23} After considering the parties' joint submission of relevant case law, the hearing panel found that the facts of this case are most similar to those of *Elum*, 148 Ohio St.3d 606, 2016-Ohio-8256, 71 N.E.3d 1085. In that case, Elum was charged with judicial and professional misconduct for advocating on behalf of a tenant in an out-of-court landlord-tenant dispute during his tenure as a Massillon Municipal Court judge. He called the landlord on the tenant's behalf and identified himself as "Eddie Elum from the Massillon Court." *Id*. at ¶ 5. He urged the landlord to accept the tenant's late rent payment, and upon learning that the landlord had already issued a three-day notice for the tenant to vacate, Elum requested two additional days for the tenant to remove his belongings from the premises. When the landlord stated that she may have already changed the locks on the property, Elum told her that she could not do that without a writ of restitution and asked her to have her lawyer contact him. Elum attempted to call the landlord on two additional occasions, but she did not return his calls.

{¶ 24} After the landlord filed a grievance against him, Elum admitted that his actions were a mistake, that he was not an appropriate person to mediate the landlord-tenant dispute, and that he understood how the landlord could have perceived his phone calls as advocating on behalf of the tenant and against her. *Id*. at ¶ 7. Ultimately, he stipulated that his conduct was prejudicial to the administration of justice, appeared to be coercive, and failed to promote public confidence in the independence, integrity, and impartiality of the judiciary.

{¶ 25} Like Salerno, Elum had a prior disciplinary offense for engaging in similar misconduct "regarding the scope of his judicial role," *id*. at ¶ 15, less than five years earlier. *See Disciplinary Counsel v. Elum*, 133 Ohio St.3d 500, 2012-

Ohio-4700, 979 N.E.2d 289, ¶ 21 (imposing a conditionally stayed six-month suspension against Judge Elum for "behav[ing] in an undignified, unprofessional, and discourteous manner towards litigants in his courtroom" and impairing the independence of the judiciary by "needlessly inject[ing] himself into an administrative investigation"). But in mitigation, we found that Elum acted without a dishonest or selfish motive, cooperated with relator's investigation and in the disciplinary proceedings, and submitted a significant amount of character and reputation evidence. *Elum*, 148 Ohio St.3d 606, 2016-Ohio-8256, 71 N.E.3d 1085, at ¶ 10.

**{¶ 26}** While recognizing that Salerno's misconduct was not identical to Elum's, the board concluded that it was neither more nor less egregious than Elum's offenses—though it expressed some concern that Salerno engaged in intemperate judicial conduct in both of her disciplinary matters. Ultimately, the board concluded that the appropriate sanction for Salerno's misconduct is a one-year suspension, stayed in its entirety on the conditions that she (1) complete a minimum of six hours of CLE focused on judicial ethics that includes training specifically related to proper judicial demeanor, civility, and professionalism, in addition to the CLE requirements of Gov.Bar R. X and Gov.Jud.R. IV, (2) engage in no further misconduct, and (3) pay the costs of this proceeding. We agree.

**{¶ 27}** Accordingly, Amelia Angela Salerno is suspended from the practice of law in Ohio for one year, with the entire suspension stayed on the conditions that Salerno (1) complete, during the period of the stayed suspension, a minimum of six hours of CLE focused on judicial ethics that includes training specifically related to proper judicial demeanor, civility, and professionalism, in addition to the CLE requirements of Gov.Bar R. X and Gov.Jud.R. IV, (2) engage in no further misconduct, and (3) pay the costs of this proceeding. If Salerno fails to comply with any of these conditions, the stay will be lifted and she shall serve the entire one-year suspension. Costs are taxed to Salerno.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

DEWINE, J., not participating.

———————————

Scott J. Drexel, Disciplinary Counsel, and Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie, and Jonson, L.P.A., and George D. Jonson, for respondent.

———————————