[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Thomas*, Slip Opinion No. 2020-Ohio-5582.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5582

DISCIPLINARY COUNSEL *v.* THOMAS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Thomas*, Slip Opinion No. 2020-Ohio-5582.]

*Attorneys—Misconduct—Violation of the Rules of Professional Conduct, namely communicating ex parte with a judicial officer or other official as to merits of a case during proceeding when not authorized by law or court order—Public reprimand.*

(No. 2020-0467—Submitted July 22, 2020—Decided December 9, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-039.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Joan Jacobs Thomas, of North Olmsted, Ohio, Attorney Registration No. 0033645, was admitted to the practice of law in Ohio in 1984.

**{¶ 2}** In July 2019, relator, disciplinary counsel, charged Thomas with violating three professional-conduct rules relating to an ex parte letter she sent to a judge's staff attorney. Although the parties entered into factual stipulations, Thomas denied that she violated any rules, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. The panel unanimously dismissed one alleged rule violation and recommended dismissing an alleged violation of Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).[1] A majority of the panel also recommended dismissing an alleged violation of Prof.Cond.R. 3.5(a)(3)(i) (prohibiting a lawyer from communicating ex parte with a judicial officer or other official as to the merits of a case during the proceeding unless authorized by law or court order). One panel member dissented from that conclusion and issued findings supporting a Prof.Cond.R. 3.5(a)(3)(i) violation and, after considering the relevant aggravating and mitigating circumstances, recommended that Thomas be publicly reprimanded.

**{¶ 3}** The board issued a report accepting the panel's recommendation to dismiss the Prof.Cond.R. 8.4(d) charge but adopting the dissenting panel member's findings relating to the Prof.Cond.R. 3.5(a)(3)(i) violation. The board also adopted the dissenting panel member's recommendation that we publicly reprimand Thomas. Thomas objects to the board's report, primarily arguing that relator failed to prove the Prof.Cond.R. 3.5(a)(3)(i) violation by clear and convincing evidence.

**{¶ 4}** For the reasons explained below, we overrule Thomas's objections and adopt the board's finding of misconduct and recommended sanction.

---

1. Gov.Bar R. V(12)(G) provides that if a unanimous hearing panel finds that the evidence is insufficient to support a charge, the panel may order on the record or in its report that it be dismissed. As an alternative to a unanimous dismissal, Gov.Bar R. V(12)(H) provides that a hearing panel may refer its findings of fact and recommendations for dismissal to the board for review.

**Misconduct**

{¶ 5} From late 2016 through 2018, Thomas represented in a divorce case a woman whose husband was in a relationship with—and later married—D.V. While testifying at an April 2, 2018 hearing, the husband mentioned that D.V. was in the process of adopting a minor child. By that time, Thomas had developed a negative opinion of D.V., and the court had prohibited D.V. from having any contact with the parties' children.

{¶ 6} Upon learning of the potential adoption, Thomas researched records at the county clerk of court's office and discovered that D.V. had moved to intervene in another couple's dissolution proceeding to obtain legal custody of their child. Judge Sherry Glass of the Lorain County Court of Common Pleas, Domestic Relations Division, was presiding over the case, and a magistrate had scheduled a final, uncontested hearing for May 24, 2018. The parents of the child had agreed to transfer custody to D.V., and the court had neither appointed a guardian ad litem nor referred the matter to Family Court Services[2] for an investigation. Thomas had significant concerns about a child living with D.V., and although Thomas had no role or involvement in D.V.'s custody matter, Thomas believed that Judge Glass needed to be alerted that an investigation should be conducted.

{¶ 7} On April 24, 2018, Thomas called relator seeking advice about the situation and spoke to an assistant disciplinary counsel. Although Thomas and the assistant disciplinary counsel dispute the substance of some of that conversation, they agree that the assistant disciplinary counsel advised Thomas to contact the county children's-services agency and not to contact "the judge directly" or "the court directly" about her concerns. Thomas believed that contacting the children's-

---

2. Family Court Services is a department of the Lorain County Court of Common Pleas, Domestic Relations Division, and provides services such as mediation, investigations, home inspections, and seminars.

services agency was not an adequate option and thereafter searched for other alternatives for raising her concerns to Judge Glass.

{¶ 8} On May 2, 2018, Thomas attended a "Brown Bag It Legal Luncheon" hosted by Judge Glass, who held the monthly luncheons so that local attorneys could discuss general legal topics in an informal manner. During the luncheon, Thomas proposed a hypothetical based on D.V.'s custody matter—but without using any names or specific facts—and sought guidance from the attendees regarding how someone who was not involved in the matter could alert the court to concerns about the proposed arrangement.

{¶ 9} Luncheon attendees agreed that it would be inappropriate to directly contact the judge presiding over the case. At her disciplinary hearing, Thomas testified that Judge Glass then stated that if the matter were before her, she would want a detailed letter sent to her staff attorney so that the judge would not see it. According to Thomas, Judge Glass explained how her staff attorney handles ex parte letters and stated that if her staff attorney determined that any action was necessary based on a letter, the letter would be shared with the litigants. Thomas further testified that at the end of the luncheon, Judge Glass patted her on the back and stated, "Now you get that letter out."

{¶ 10} Judge Glass and her staff attorney, Amy Barnes, also testified at Thomas's disciplinary hearing and disputed that the judge had invited or suggested sending a letter to her staff attorney in response to Thomas's hypothetical. Judge Glass and Barnes acknowledged that at the luncheon, the judge outlined her office's protocol for handling ex parte letters. Specifically, the judge testified that she told the group that her office "[i]nevitably" receives letters "from a concerned grandmother, a neighbor," a detention home, or the county jail and that in an effort to shield her from such communications, her staff attorney reviews them and either returns them or takes necessary action. Judge Glass also testified that she would never say, "Get that letter in" because she does not want or encourage such letters.

{¶ 11} After the luncheon, Thomas saw D.V.'s counsel in the courthouse, expressed to him her concerns about D.V., and advised him that she might send a letter to the court in D.V.'s custody case. On May 16, 2018, Thomas sent a four-page letter to the fax number for Judge Glass's chambers but addressed the letter to Barnes. The letter began as follows: "I am sending this correspondence to you since it is ex parte communication and I do not wish to expose the Judge to a situation wherein she feels the need to recuse herself from this matter. I trust you can determine the necessary steps to take from here." Thomas then detailed her concerns about D.V.'s proposed custody arrangement. Thomas "implore[d] th[e] court to appoint a very aggressive and thorough Guardian ad Litem and to seek a referral to [Family Court Services] to thoroughly investigate" the matter. Thomas did not send a copy of the letter to D.V.'s counsel, nor did her letter indicate that she copied the parties in the matter. At her disciplinary hearing, Thomas admitted that she sent the letter with the goal of causing Judge Glass to appoint a guardian ad litem and refer the matter for an investigation.

{¶ 12} Upon receiving the letter, Barnes treated it as an ex parte communication and followed Judge Glass's protocol for handling such material. Barnes described the letter to Judge Glass, and the judge scheduled a hearing for July 31, 2018. At the previously scheduled May 24 hearing, a magistrate advised D.V. and her counsel—the other parties had failed to appear—that the court had "obtained information from a different source" and that the matter would be rescheduled for a hearing before Judge Glass.

{¶ 13} D.V.'s counsel thereafter asked Thomas whether she had sent her letter to the judge and requested a copy. Thomas admitted sending the letter but refused to provide him with a copy. According to Thomas, she invited D.V.'s counsel to view the letter in her office but advised him that she did not want him to share a copy with D.V., who Thomas believed would retaliate against her if she saw

the letter. Thomas testified that she was fearful of D.V. and that D.V. had previously threatened her in court.

{¶ 14} D.V.'s counsel first received a copy of the letter at the July 31, 2018 hearing when Judge Glass distributed copies to the parties. During that hearing, the judge informed the parties that she had not personally reviewed the ex parte communication but that her staff attorney had determined that certain issues raised in the letter should be addressed. The judge later referred the matter to Family Court Services for an investigation and an inspection of D.V.'s home. A few months later, Family Court Services submitted its report to the court, and on October 23, 2018, a magistrate determined that it was in the best interest of the child to be placed in the legal custody of D.V. A few months prior to that determination, D.V. had filed a grievance against Thomas.

{¶ 15} The board found the evidence undisputed that Thomas sent a detailed letter to Judge Glass's staff attorney regarding the merits and facts of a pending case with the intent to cause the judge to take certain actions. In doing so, the board noted, Thomas had deprived D.V. of the opportunity to review the letter, consult her attorney about its contents, or formulate a legal strategy regarding how to respond. Thomas's argument that her letter was not ex parte, the board concluded, would suggest the existence of a "recognized channel of communications" through which an attorney may directly communicate with a court about the merits of a case without notifying the other litigants in the matter, as long as the communication is addressed to the staff attorney and not the judge. The board therefore found that Thomas violated Prof.Cond.R. 3.5(a)(3)(i).

*Thomas's first objection*

{¶ 16} As her first objection, Thomas argues that relator failed to prove that she willfully violated Prof.Cond.R. 3.5(a)(3)(i) because "the evidence at hearing demonstrated" that her letter to Barnes "was provided according to a protocol

6

established by the very court to which the communication was submitted" and that Thomas had "followed that protocol." We disagree.

{¶ 17} Thomas, Judge Glass, and Barnes testified that at the brown-bag luncheon, Judge Glass discussed her office's protocol for handling ex parte letters. But the fact that Judge Glass had publicly discussed an internal protocol for handling ex parte communications did not authorize Thomas—an officer of the court—to send one. In other words, it was unreasonable for Thomas to presume that the existence of the protocol created an avenue for her to communicate with the judge through her staff attorney without including the parties to the case and their counsel.

{¶ 18} And although Thomas testified that Judge Glass had stated that she would want a detailed letter sent to her staff attorney, both Judge Glass and Barnes denied that the judge had invited or requested such a letter. Judge Glass testified that receiving ex parte letters "puts [the court] in a dilemma," that "the whole system is in place so it doesn't happen," and that "[w]e don't want letters." Barnes testified that "[a]t no time at the luncheon was Attorney Thomas directed or at no time did anyone * * * say to her, 'It's fine if you go ahead and contact Judge Glass's staff attorney or send something to Judge Glass.' " Thus, the hearing evidence did not demonstrate that Thomas "followed" any protocol established by Judge Glass. And even according to Thomas's version of the events at the luncheon, she never suggested that Judge Glass instructed her to refuse to provide copies of the letter to D.V.'s counsel.

{¶ 19} Even if Judge Glass had instructed Thomas to send an ex parte letter to a court, Thomas would not be absolved of responsibility for her own part in the misconduct. In *Disciplinary Counsel v. Stuard*, 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788, we found that a judge and an assistant prosecutor had engaged in improper ex parte communications after the judge instructed the prosecutor to draft

the judge's sentencing opinion and the prosecutor complied—all outside the presence of defense counsel.

{¶ 20} "[W]hile it may be permissible for a private citizen to write to a judge about a pending case, it is improper for an attorney not representing a party in the case to directly or indirectly communicate with a judge to influence the outcome of pending litigation." *Disciplinary Counsel v. Detty*, 96 Ohio St.3d 57, 2002-Ohio-2992, 770 N.E.2d 1015, ¶ 5 (finding that such conduct amounted to professional misconduct but without addressing the prohibition against ex parte communications). Thomas's conduct was similarly improper, and her unreasonable belief that she was somehow following a protocol for submitting ex parte communications to Judge Glass's court does not justify a departure from the board's conclusion. We therefore overrule Thomas's first objection.

*Thomas's second objection*

{¶ 21} As her second objection, Thomas argues that her letter to Barnes falls outside the ambit of Prof.Cond.R. 3.5(a)(3)(i). As noted above, that rule prohibits an attorney from communicating "ex parte" with "a judicial officer or other official as to the merits of the case during the proceeding."

{¶ 22} Thomas first asserts that her letter was not ex parte. The Rules of Professional Conduct do not specifically define "ex parte," *see* Prof.Cond.R. 1.0, but the Code of Judicial Conduct defines an "ex parte communication" as "a communication, concerning a pending or impending matter, between counsel or an unrepresented party and the court when opposing counsel or an unrepresented party is not present *or any other communication made to the judge outside the presence of the parties or their lawyers*" (emphasis added), Jud.Cond.R. Terminology.

{¶ 23} Rather than the code's definition, Thomas cites a dictionary definition of "ex parte" as meaning "of or from one side or party." Her letter falls outside this definition, Thomas argues, because it merely urged the court to consider all individuals involved in the nonadversarial custody arrangement.

Thomas also asserts that she notified D.V.'s counsel before sending the letter, she offered him an opportunity to view it but he "simply was not interested," and he ultimately received a copy from the court.

{¶ 24} The content of Thomas's letter, however, undercuts her current characterization of it. In the letter, Thomas described the communication as "ex parte." She sent the letter to "alert the court to many issues concerning [D.V.'s] becoming the custodial parent" and included allegations about the conditions of D.V.'s home, her treatment of her children, her mental health, her financial condition, and her marital status. After identifying those issues, Thomas requested that the court appoint a "very aggressive and thorough" guardian ad litem and refer the matter for an investigation "so that this child may be protected and have some chance in life." The child, Thomas continued, "deserve[d] to have th[e] court be aware of this information * * * so that th[e] court has the opportunity to thoroughly investigate what would serve her best interest instead of three people [presumably, D.V. and the child's parents] who have self serving interests deciding her fate for her."

{¶ 25} Contrary to Thomas's contention, her letter presented a one-sided view of D.V. and advocated that "the court"—which is Judge Glass—take certain actions on behalf of the child. An attorney's interjecting such information into a pending adjudicative proceeding—outside the presence of other counsel and parties—amounts to an ex parte communication.

{¶ 26} In addition, D.V.'s counsel certainly showed interest in the letter. He requested a copy by telephone and in two separate e-mails to Thomas, one of which she admitted to ignoring. Regardless, whether D.V.'s counsel could have done more to obtain a copy of the letter is irrelevant. As the board concluded, if Thomas had simply served her letter on the parties, "these proceedings would have been avoided as there would have been no *ex parte* communication."

{¶ 27} Thomas next argues that Prof.Cond.R. 3.5(a)(3)(i) does not apply to ex parte communications directed to a judge's staff attorney. She cites the rule's comments, which note that the rule applies to an attorney's contact "with persons serving in an official capacity in the proceeding, such as judges, masters, magistrates, or jurors." Prof.Cond.R. 3.5, Comment [2]. Thomas argues that because Barnes was not serving in any "official capacity" in D.V.'s custody case, Thomas did not violate Prof.Cond.R. 3.5(a)(3)(i).

{¶ 28} In response to this argument, relator points out that Barnes is a sworn magistrate for Judge Glass and therefore a "judicial officer." But Judge Glass and Barnes testified that Barnes had reviewed Thomas's letter in her capacity as the judge's staff attorney—not as a magistrate.

{¶ 29} We have not previously applied Prof.Cond.R. 3.5(a)(3)(i) to an attorney's communications with a judge's staff attorney—although we have found that the rule prohibits an attorney from engaging in indirect ex parte communications with a judge. In *Disciplinary Counsel v. O'Malley*, 137 Ohio St.3d 161, 2013-Ohio-4566, 998 N.E.2d 470, an attorney requested that the county auditor—who personally knew the judge presiding over a case involving the attorney—request that the judge issue certain rulings that would assist the attorney in settling the matter. We found that the attorney's indirect communication with the judge violated Prof.Cond.R. 3.5(a)(3)—even though the county auditor was not a "judicial officer" and had no "official capacity" in the case. *Id.* at ¶ 11, 14.

{¶ 30} We have also found that a judge can violate Jud.Cond.R. 2.9(A)— the rule in the Code of Judicial Conduct prohibiting judges from initiating, receiving, permitting, or considering ex parte communications—based on communications between the judge's staff and an attorney. In *Disciplinary Counsel v. Salerno*, 156 Ohio St.3d 244, 2019-Ohio-435, 125 N.E.3d 838, defense counsel had texted a judge's bailiff requesting a reduction in a defendant's bond. The judge thereafter reduced the bond amount—without informing the prosecutor of the text

10

messages. At her disciplinary hearing, the judge testified that she did not initially believe that the messages were improper "because they came to her through her bailiff." *Id.* at ¶ 12. But the judge later acknowledged—and we found—that "the text messages were improper ex parte communications." *Id.* at ¶ 12-13, 19.

{¶ 31} Thomas argues that *O'Malley* and *Salerno* are distinguishable because unlike the attorney in *O'Malley*, she had no malicious motive and unlike the attorney in *Salerno*, she never wanted Judge Glass to see her letter and, in fact, the judge never saw it and was not influenced by it. But nowhere in *O'Malley* did we state that the attorney's motive for engaging in the ex parte communication was a determining factor for the Prof.Cond.R. 3.5(a)(3) violation. Thomas's belief that she was protecting the child's interests did not justify her decision to dispense with established rules designed to protect the integrity of judicial proceedings. And contrary to Thomas's contention, Judge Glass was influenced by Thomas's letter: the judge testified that she referred the matter for an investigation because of the information contained in the letter. Regardless, *Salerno* is relevant here because in that case, the judge violated the prohibition against ex parte communications as a result of an attorney's contact with the judge's staff—which contradicts Thomas's argument that a judge and her staff attorney should be considered as separate for purposes of ex parte communications.[3]

---

3. *See also* 2 Restatement of the Law 3d, The Law Governing Lawyers, Section 113, Comment d (2000) (the rule prohibiting an attorney from engaging in ex parte communications "also applies to indirect communications, as through a judge's clerk"); *Disciplinary Counsel v. Stafford*, 131 Ohio St.3d 385, 2012-Ohio-909, 965 N.E.2d 971, ¶ 85 (O'Donnell, J., concurring) (recognizing that the comments to Section 113 of the Restatement prohibit ex parte communications "between * * * counsel and the judge's staff"); *Kaufman v. Am. Family Mut. Ins. Co.*, D.Colo. No. 05-cv-02311-WDM-MEH, 2008 WL 4980360, *3 (Nov. 19, 2008) ("I consider chamber's staff, including law clerks, to be an extension of the judicial officer and to be covered by" the prohibitions on ex parte communications in Rule 3.5 of the Colorado Rules of Professional Conduct and a similar local court rule); *Adams v. Naphcare, Inc.*, E.D.Va. No. 2:16-cv-229, 2016 WL 6699136, *5 (Nov. 14, 2016) ("Both the Virginia Rules of Professional Conduct and Canons of Judicial Ethics prohibit ex parte communications between an attorney and a judge (and the judge's staff) regarding the merits of a case"); *Kamelgard v. Am. College of Surgeons*, 385 Ill.App.3d 675, 679, 895 N.E.2d 997 (2008) ("the judge's law clerk is an extension of the judge" for purposes of the prohibition on ex parte

**{¶ 32}** In the end, we cannot accept Thomas's contention that no rule violation occurred here because she addressed the letter to the judge's staff attorney, who Thomas claims had no "official capacity" in the proceeding. Thomas's letter plainly requested that the court take official action, and Thomas testified that she sent the letter with the goal of causing Judge Glass to issue certain orders that only the judge—not her staff attorney—could issue. While Thomas may not have intended for the letter itself to be provided to the judge, she certainly sought to have enough of its substance conveyed to the judge to influence the judge's handling of the case. We therefore overrule Thomas's second objection.

**{¶ 33}** Having overruled Thomas's objections, we agree with the board that Thomas violated Prof.Cond.R. 3.5(a)(3)(i) by communicating ex parte with Judge Glass's staff attorney with the objective of passing information on to the judge. Thomas sent Barnes a letter including significant factual allegations about D.V. with the goal of causing Judge Glass to take certain actions—all without copying D.V.'s counsel on the letter. In other words, Thomas, knowing that directly communicating with Judge Glass would be improper, attempted to use the judge's staff attorney as a conduit to pass along the information. Prof.Cond.R. 3.5(a)(3)(i)'s prohibition against ex parte communications protects the integrity of the justice system. As the board found, to conclude that Thomas acted appropriately because she addressed her letter to Barnes rather than Judge Glass would suggest "that there exists this back-channel method of communicating concerns to a court on pending legal matters" and could lead to a process in which attorneys "could seek to lobby and influence the judge handling the case by sending communications regarding the case to the judge's administrative staff."

---

communications); *Martinez-Jones v. Dulce Indep. Schools*, D.N.M. No. CIV-07-0703 JB/WDS, 2008 WL 2229472, *5 (Mar. 5, 2008) ("Attorneys and *pro se* parties are prohibited from all *ex parte* communication with the judge or judge's staff").

{¶ 34} We adopt the board's finding of misconduct. We also accept the board's recommendation to dismiss the Prof.Cond.R. 8.4(d) charge.

**Sanction**

{¶ 35} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 36} The board found one aggravating factor—that Thomas had refused to acknowledge the wrongful nature of her conduct. *See* Gov.Bar R. V(13)(B)(7). As for mitigating factors, the board found that Thomas has a clean disciplinary record, had lacked a selfish or dishonest motive, had exhibited a cooperative attitude toward the disciplinary proceedings, and had submitted evidence of good character and reputation. *See* Gov.Bar R. V(13)(C)(1), (2), (4), and (5).

{¶ 37} Thomas objects to the aggravating factor. She points to the board's findings that (1) she clearly viewed Judge Glass's explanation of her protocol for handling ex parte letters as a "green light" to correspond directly with Barnes, (2) she took active steps to avoid directly communicating with Judge Glass, and (3) she perceived that the judicial process had not allowed for sufficient inquiry into the child's best interests. Based on these findings, Thomas argues, her failure to acknowledge the wrongful nature of her conduct should not be an aggravating factor.

{¶ 38} Thomas's objection here highlights her intent and motive. The board credited her for lacking a selfish or dishonest motive and recognized that she appeared genuinely driven by a desire to protect the child. But despite Thomas's good intentions, she had an obligation to communicate with the court in an appropriate manner. At her disciplinary hearing, Thomas testified that she did not understand how D.V. could have been affected by Judge Glass's ordering an investigation based on Thomas's letter without giving D.V. an opportunity to

review it or respond. And in her objections, Thomas continued to assert that "there was no avenue other than following the judge's protocol, which was the appropriate avenue." Because Thomas has not acknowledged that her actions were in any way inappropriate, we overrule her objection to the aggravating factor.

{¶ 39} Considering Thomas's lengthy and otherwise unblemished legal career and her evidence of good character and reputation, the board recommends that we publicly reprimand her. We conclude that a public reprimand is consistent with the sanctions that we have imposed for comparable misconduct and therefore adopt the board's recommended sanction. *See, e.g.*, *Stuard*, 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788 (publicly reprimanding an assistant prosecutor for engaging in ex parte communications with a judge in a death-penalty case); *Cincinnati Bar Assn. v. Sauter*, 96 Ohio St.3d 136, 2002-Ohio-3610, 772 N.E.2d 620 (publicly reprimanding a judicial law clerk who had engaged in an ex parte communication with counsel in a case pending before the law clerk's judge).

### Conclusion

{¶ 40} For the reasons explained above, Joan Jacobs Thomas is publicly reprimanded for violating Prof.Cond.R. 3.5(a)(3)(i). Costs are taxed to Thomas.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, and DONNELLY, JJ., concur.

STEWART, J., dissents, with an opinion.

_____

**STEWART, J., dissenting.**

{¶ 41} I agree with the majority of the hearing panel of the Board of Professional Conduct that relator, disciplinary counsel, has failed to show by clear and convincing evidence that respondent, Joan Thomas, violated Prof.Cond.R. 3.5(a)(3)(i) when she sent a letter to Judge Sherry Glass's staff

14

attorney. Accordingly, I would not adopt the board's finding of misconduct or impose the sanction it recommended.

### Prof.Cond.R. 3.5(a)(3)(i) does not prohibit the type of communication at issue here

{¶ 42} Prof.Cond.R. 3.5(a)(3)(i) states that "[a] lawyer shall not * * * communicate ex parte with * * * a judicial officer or other official as to the merits of the case during the proceeding unless authorized to do so by law or court order." The rule's comments explain that the rule prohibits communications with those serving in an "official capacity" during the proceeding, "such as judges, masters, magistrates, or jurors." Prof.Cond.R. 3.5, Comment [2]. What all these individuals have in common is that they have decision-making authority over cases; staff attorneys and other court personnel do not. Indeed, as the majority opinion acknowledges, this court has never before applied Prof.Cond.R. 3.5(a)(3)(i) to an attorney's communications with a judge's staff attorney. Perhaps one reason for this is that nothing in Prof.Cond.R. 3.5(a)(3)(i) or its comments explicitly prohibits such communications.

{¶ 43} Thus bereft of any helpful language in the rule, the majority looks to other disciplinary decisions of this court for support for its holding. But the cases it relies on are distinguishable.

{¶ 44} For instance, in *Disciplinary Counsel v. Salerno*, 156 Ohio St.3d 244, 2019-Ohio-435, 125 N.E.3d 838, we found that a judge violated her duty under Jud.Cond.R. 2.9(A)[4] when she reduced a defendant's bond amount based on text

---

4. Jud.Cond.R. 2.9 states:

> (A) A judge shall not initiate, receive, permit, or consider ex parte communications, except as follows:
> (1) When circumstances require it, an ex parte communication for scheduling, administrative, or emergency purposes, that does not address substantive matters or issues on the merits, is permitted, provided the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;

messages that defense counsel had sent to the judge's bailiff. In his texts, defense counsel explained that his client's initial bond was substantially higher than a codefendant's and asked whether the discrepancy was a mistake and, if so, whether it could be corrected by the end of the day. The bailiff replied that he would pass the information along to the judge to find out whether the bond amount was correct and explained that if the bond indeed needed correction, then the judge, not the bailiff, would have to do it. After receiving defense counsel's text inquiry from her bailiff, the judge reduced the defendant's bond without first notifying the prosecutor of her intent to do so or of the inquiry.

{¶ 45} Although we referred to the text messages as "ex parte" communications in *Salerno*, *id.* at ¶ 11, we never found that defense counsel violated Prof.Cond.R. 3.5(a)(3)(i) by sending them. And apparently, no

---

(2) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives notice to the parties of the person consulted and the subject-matter of the advice solicited, and affords the parties a reasonable opportunity to object or respond to the advice received;

(3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record and does not abrogate the responsibility personally to decide the matter;

(4) A judge, with the consent of the parties, may confer separately with the parties and their lawyers in an effort to settle matters pending before the judge;

(5) A judge may initiate, receive, permit, or consider an ex parte communication when expressly authorized by law to do so;

(6) A judge may initiate, receive, permit, or consider an ex parte communication when administering a specialized docket, provided the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage while in the specialized docket program as a result of the ex parte communication.

(B) If a judge receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.

Jud.Cond.R. 2.9(A) and (B).

disciplinary proceedings were brought against defense counsel for sending the text messages to the bailiff.

{¶ 46} The majority maintains that *Salerno* supports the court's decision in this case because without the attorney's ex parte communications with the bailiff, the judge would not have violated Jud.Cond.R. 2.9(A). According to the majority, this fact "contradicts Thomas's argument that a judge and her staff attorney should be considered as separate for purposes of ex parte communications." Majority opinion at ¶ 31. I am not persuaded by the court's analysis on this point. To begin with, nothing in our decision in *Salerno* suggests that we understood the bailiff to be an extension of the judge in that case. Furthermore, it does not necessarily follow that just because the judge violated her duty under Jud.Cond.R. 2.9(A) when she acted upon a communication sent to her bailiff, the attorney must also have violated Prof.Cond.R. 3.5(a)(3)(i) by sending the communication. A judge's duty under Jud.Cond.R. 2.9(A) is more precise and broader than an attorney's duty under Prof.Cond.R. 3.5(a)(3)(i). Under Jud.Cond.R. 2.9(A), a judge must avoid *acting on any ex parte communication* that comes into his or her possession—directly, indirectly, or by sheer accident—unless and until the judge shares the communication with the parties and the parties are allowed to respond, *see* Jud.Cond.R. 2.9(B). This duty is different from an attorney's duty under Prof.Cond.R. 3.5(a)(3)(i) to avoid engaging in ex parte communications with *certain people*—specifically, the judge or other decision-makers—on substantive aspects of the case.

{¶ 47} That a judge may not act on a matter in response to *any ex parte communication*, regardless of how the communication came to the judge's attention, makes perfect sense. We cannot have a justice system in which a court acts on information that is not made known to all parties and before they are given the opportunity to respond. But not every violation by a judge of his or her duty

under Jud.Cond.R. 2.9(A) means that there has been some corresponding ex parte-communication violation on the part of an attorney.

{¶ 48} The majority's reliance on *Disciplinary Counsel v. O'Malley*, 137 Ohio St.3d 161, 2013-Ohio-4566, 998 N.E.2d 470, is also misplaced. In that case, we found that O'Malley violated Prof.Cond.R. 3.5(a)(3)(i) by having the county auditor, a personal acquaintance of the judge, speak to the judge on his behalf and request that the judge rule on pending motions in a way that was beneficial to O'Malley's client. By engaging the county auditor to do his bidding, O'Malley was able to communicate with the decision-maker indirectly through another person.

{¶ 49} There is an important difference between what happened in *O'Malley* and what happened in this case. Here, Thomas specifically directed her letter to the judge's staff attorney to avoid implicating the judge in any improper communication. The first sentence of the letter makes sure that the staff attorney is aware that the letter is directed to her and not the judge specifically because it is an ex parte[5] communication that Thomas did not want the judge to see. The second sentence of the letter states, "I trust you can determine the necessary steps to take from here." Only then does the letter go on to explain why a guardian ad litem should be appointed to represent the child's interests and why a family-services investigation is warranted. Thomas left it up to the staff attorney to decide what to do with the letter. The staff attorney could have sent it back to Thomas with no comment, sent it back to Thomas with instructions to file it and serve it on the parties, or do what she did here—screen the communication in such a way that

---

5. Because the Rules of Professional Conduct do not define the term "ex parte," the majority applies a definition of "ex parte communication" used in the Code of Judicial Conduct. It is worth noting, however, that the terminology section of the Code of Judicial Conduct makes clear that the definitions it sets forth are meant to apply specifically to those words *as used within* the Code of Judicial Conduct. Jud.Cond.R. Terminology. Accordingly, there is no logical reason for the majority to reject the dictionary definition of "ex parte" supplied by Thomas or to assume that Thomas understood her letter to be a violation of the Rules of Professional Conduct even though she referred to her letter as an ex parte communication.

prevented the judge from seeing or hearing the prejudicial facts alleged in the letter while allowing the *judge* to decide whether the parties should be notified and whether any further action should be taken. These particular facts do not show that Thomas used the staff attorney as a conduit for improperly communicating with the judge as the attorney did in *O'Malley*.

{¶ 50} Furthermore, if this court is going to take the position that Prof.Cond.R. 3.5(a)(3)(i) prohibits ex parte communications with a judge's nondecision-making staff—because staff is nothing more than an extension of the judge—then under no circumstances should staff be allowed to screen communications sent to chambers. But this court has explicitly condoned that practice as a reasonable measure taken by judges to avoid seeing ex parte communications. *See State ex rel. Beacon Journal Publishing Co. v. Whitmore*, 83 Ohio St.3d 61, 63, 697 N.E.2d 640 (1998).

{¶ 51} Lastly, the majority fails to show that it is a violation of Prof.Cond.R. 3.5(a)(3)(i) for an attorney who is *not* representing a party in the pending matter to communicate with the court. Indeed, in all cases the majority opinion cites except for one, a lawyer representing a party to the action did the communicating. *See Disciplinary Counsel v. Stuard*, 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788 (prosecutor in the case communicating with judge); *O'Malley*, 137 Ohio St.3d 161, 2013-Ohio-4566, 998 N.E.2d 470 (attorney of record in the case indirectly communicating with judge); *Salerno*, 156 Ohio St.3d 244, 2019-Ohio-435, 125 N.E.3d 838 (defense counsel in the case communicating with bailiff); *Disciplinary Counsel v. Stafford*, 131 Ohio St.3d 385, 2012-Ohio-909, 965 N.E.2d 971, ¶ 81-91 (O'Donnell, J., concurring) (attorney of record in the case communicating with judge);[6] *Kaufman v. Am. Family Mut. Ins. Co.*, D.Colo. No. 05-cv-02311-WDM-

---

6. The majority opinion cites 2 Restatement of the Law 3d, The Law Governing Lawyers, Section 113, Comment d, and Justice O'Donnell's concurring opinion in *Stafford*, which cites the same, as support for the court's conclusion that an attorney's communication with court staff violates the

MEH, 2008 WL 4980360 (Nov. 19, 2008) (attorney of record in the case communicating with law clerk); *Adams v. Naphcare, Inc.,* E.D.Va. No. 2:16-cv-229, 2016 WL 6699136 (Nov. 14, 2016) (attorney of record in the case communicating with law clerks); *Kamelgard v. Am. College of Surgeons*, 385 Ill.App.3d 675, 895 N.E.2d 997 (2008) (attorney of record in the case communicating with law clerk); *see also Martinez-Jones v. Dulce Indep. Schools*, D.N.M. No. CIV-07-0703 JB/WDS, 2008 WL 2229472, *5 (Mar. 5, 2008) (citing court's pro se-litigant guide, which states that attorneys and pro se litigants may not engage in ex parte communications with a judge's staff but explains that "[e]x parte communication occurs *when one of the parties to a lawsuit* exchanges information with the assigned judge (1) without the opposing party being present, or (2) without the knowledge and consent of the opposing party" [emphasis added]).

{¶ 52} The only case the majority opinion cites that presents facts even remotely similar to those of this case is *Disciplinary Counsel v. Detty*, 96 Ohio St.3d 57, 2002-Ohio-2992, 770 N.E.2d 1015. In that case, we adopted the board's conclusion that Detty had violated former DR 1-102(A)(5) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice) and 1-102(A)(6) (prohibiting a lawyer from engaging in conduct adversely reflecting on the lawyer's fitness to practice law) when Detty approached a judge who was

---

prohibition on ex parte communications. In doing so, the majority overlooks the fact that Section 113, Comment c explicitly states that "[a]n ex parte communication is one that concerns the matter, *that is between a lawyer representing a client and a judicial officer*, and that occurs outside of the presence and without the consent of other parties to the litigation or their representatives." (Emphasis added.) This court should not cherry-pick which comments in the Restatement to focus on and which to ignore, merely to find support for its decision. Nor should it choose arbitrarily which definition of "ex parte" it wishes to apply. *See* majority opinion at ¶ 22 (adopting the Code of Judicial Conduct's definition of "ex parte communication"). "The Ohio Rules of Professional Conduct are rules of reason," Prof.Cond.R. Scope [14], not games of chance. To comply with a rule, one has to understand what the rule prohibits and what it allows. If we, the highest court in the state, are reduced to reliance on authorities *outside* the rule to understand the import of words used *in* the rule, maybe the rule is insufficiently clear to place an attorney on notice of its requirements until we, using the outside sources we select, have explicated them.

presiding over a divorce proceeding to discuss his concerns about the way the case was being handled—in particular, that the magistrate was willing to allow the divorcing couple's children holiday visitation with their father despite accusations of child abuse. Although Detty was not counsel to either party in the divorce proceeding, he was the romantic partner of the plaintiff-wife. Important to note about this case is that Detty was not found to have violated DR 7-110, the precursor to Prof.Cond.R. 3.5(a)(3)(i). This tends to show that Prof.Cond.R. 3.5(a)(3)(i) applies only to attorneys representing parties in the case who communicate with the judge ex parte, while other rules regulate the same conduct of attorneys who neither represent a party to an action nor are a party themselves.

### There is no reason for a public reprimand

{¶ 53} Even if I agreed with the majority's conclusion that Prof.Cond.R. 3.5(a)(3)(i) impliedly prohibits communications between an attorney and a judge's staff, I would see no reason to sanction Thomas given the unique facts of this case. Gov.Bar R. IV(1) makes clear that only a *willful* breach of the Rules of Professional Conduct shall be punished by a public reprimand, suspension, disbarment, or probation. I fail to see how Thomas willfully breached her duty under Prof.Cond.R. 3.5(a)(3)(i) when the language of the rule does not prohibit her actions and she seemed to have believed that if she followed the court's protocol for screening ex parte communications, it would stop the contents of the communication from reaching the judge. Indeed, it is telling that despite lawyers' ethical duty under Prof.Cond.R. 8.3 to report rule violations when they see them, neither Judge Glass nor the staff attorney nor counsel for D.V. (the intervenor in the dissolution case) reported Thomas's communication as a potential violation of the Rules of Professional Conduct. Instead, it was D.V. who filed the grievance against Thomas once she became aware of the letter—and before she even knew of the letter's contents.

{¶ 54} Furthermore, the majority opinion fails to acknowledge a number of relevant facts that warrant consideration in this matter. Thomas found herself in the unique and undesirable position of being privy to some information about D.V.'s personal life that called into question her fitness to parent. Specifically, Thomas knew: that D.V. had had children removed from her custody in the past and had been prohibited by court order from having contact with her stepchildren; that D.V. was not financially secure and had recently declared bankruptcy; that D.V. had intervened in a dissolution proceeding to gain legal custody of the couple's six-year-old special-needs child and that the couple was not contesting the transfer; that that child was not the couple's biological child and that she had spent time in foster care before being adopted by the couple along with the child's two biological siblings; that the uncontested transfer of custody involved only the six-year-old and not her siblings, which meant that the child would be removed from her parents' home where her biological siblings resided only to be placed with D.V., a person with whom she had no biological or legal relationship; that this matter was proceeding through the courts in an uncontested fashion and that in fact the only person that had any legal representation whatsoever was D.V., the intervenor; and that the court had not appointed a guardian ad litem to represent the child, nor had the court ordered any neutral investigation into whether D.V. was fit to parent. These factors at least demonstrate Thomas's cause for concern.

{¶ 55} In light of these facts—and considering also that Thomas has never in 36 years of practice been subjected to discipline and acted here with no ill motive—there is no discernible reason to sanction her. It might even be said that her concern and her efforts are in line with what lawyers are supposed to do. Thomas relayed information she knew regarding the well-being of a child and did so in as unobtrusive a manner as possible, and in a way that

maintained the court's impartiality. Because of her concern for the child, she *suggested* that a guardian ad litem be appointed or a neutral investigation be conducted—one or the other of which was in fact proper under the circumstances—and she did it because she could discern no other option.[7]

{¶ 56} Accordingly, I would find that Thomas did not violate Prof.Cond.R. 3.5(a)(3)(i) when she sent the letter to the judge's staff attorney and that she should not be sanctioned. Because the majority decides otherwise, I dissent.

————————

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond and Matthew A. Kanai, Assistant Disciplinary Counsel, for relator.

Winter Trimacco Co., L.P.A., Richard C. Alkire, and Dean Nieding, for respondent.

————————

4. The majority opinion seems to suggest that Thomas should have contacted the county children's-services agency to report her concerns. However, the record before us shows that this was not a realistic option because generally, children's services gets involved only when a specific incident of child abuse or neglect has been reported. That was not the issue here. The majority's suggestion that Thomas could have avoided violating the Rules of Professional Conduct by filing the communication with the court and serving it on the parties is also unpersuasive. As noted above, Thomas was not a party in the case and was not counsel to any party in the case. Her communication to the judge's staff attorney was made out of concern for a child's well-being and only after Thomas had explored how best to communicate that concern.